# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KATHLEEN BULLARD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| **vs.** ) | **2:09-cv-1237-AKK** |
| ) | |
| **CHINA WAY RESTAURANT,** ) | |
| **INC. et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

## I.  PROCEDURAL HISTORY

This case arises under this court's federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1441.  Plaintiff Kathleen Bullard ("Bullard") filed this suit in state court against several defendants, including Chevron U.S.A. Inc. ("Chevron") on July 8, 2008.  Doc. 11, Ex. A.

Bullard amended her complaint to add new parties and claims on October 31, 2008, (doc. 1, ex. A), and again on June 1, 2009.[1]  Doc. 11, Ex. C.  The Second Amended Complaint added federal claims for race and gender discrimination,

---

[1] Although the Second Amended Complaint is dated March 30, 2009, Bullard filed it on June 1, 2009, as indicated by the file stamp.  (Doc. 1, Ex. A, Second Am. Compl.).

1

making the case removable.² Chevron removed the case to this court on June 19, 2009. Doc. 1.

Bullard also names as defendants the Super Deli, Ty Van Nguyen, and Hieu Nguyen. The Super Deli is a convenience store in Birmingham, Alabama that sells Texaco³ gasoline. Doc. 11, Ex. B ¶¶ 1, 6. Ty Van Nguyen and Hieu Nguyen own the Super Deli. Doc. 11, Ex. B ¶ 5. Bullard alleges that Ty Van Nguyen and Hieu Nguyen attacked her on August 17, 2007 while she was at their store. Doc. 11, Ex. B ¶¶ 1-5. Thereafter, Bullard alleges that Ty Van Nguyen posted a sign at the Super Deli falsely accusing her of theft. Doc. 11, Ex. B ¶¶ 31-32. Bullard alleges that the Nguyens were acting within their authority as agents of Chevron U.S.A., Inc. Doc. 11, Ex. B ¶ 6.

On October 15, 2009, Chevron moved for summary judgment, arguing that "plaintiff has failed to establish any evidence . . . of any agency relationship between Chevron U.S.A. Inc. and the Super Deli, Ty Van Nguyen and Hieu

---

²Although Bullard's Second Amended Complaint does not cite to any federal statutory provisions, Counts 10-12 of the Second Amended Complaint sufficiently allege violations of 42 U.S.C. § 2000a and/or 42 U.S.C. § 1981. Doc. 11, Ex. C ¶¶ 55-72; Doc. 1 ¶¶ 6-7.

³This court takes judicial notice that Chevron and Texaco merged in 2001 and, since 2005, operate under the Chevron name. However, Chevron continues to market the Texaco brand of gasoline. *See* www.chevron.com. Initially, Bullard named only Chevron as a party to this action, but she added Texaco as a defendant in her Second Amended Complaint. However, she never served Texaco with a complaint and summons. Consequently, this court dismissed Texaco on February 22, 2010. Doc. 18.

Nguyen." Doc. 9 at 2. Bullard responded on November 6, 2009, (doc. 12), arguing that she presented sufficient evidence to establish a genuine issue of material fact on the agency relationship between the Nguyens and Chevron. Doc. 12 at 4. Chevron replied on November 17, 2009, (doc. 13), and moved for a hearing on the motion for summary judgment on January 11, 2010, (doc. 16). Having reviewed the pleadings, the parties' submissions, and the evidence, this court determines that Chevron's Motion for Summary Judgment is due to be granted for the reasons stated below.

## II.  SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings"

to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotations omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### III.  FACTUAL BACKGROUND

The facts summarized below are undisputed except where otherwise indicated.  On April 17, 2007, Bullard entered the Super Deli to purchase cigarettes and soda.  Doc. 11, Ex. D, Bullard Dep. 49:16-52:10.  She purchased the cigarettes, and then paid for a bag of ice and the soda separately.  Doc. 11, Ex. D, Bullard Dep. 51:11-52:23.  She then removed a bag of ice from a cooler and exited the store.  Doc. 11, Ex. D, Bullard Dep. 56:14-19.  After she exited, Ty Van Nguyen asked her to return, saying that she stole the ice.  As she turned to enter the store, he grabbed her collar, pulled her through the door, and hit her.  Doc. 11, Ex. D, Bullard Dep. 56:23-59:22.  An altercation then ensued between Bullard, Ty Van Nguyen, and Hieu Nguyen.  Doc. 11, Ex. D, Bullard Dep. 60:7-62:2. Bystanders broke up the fight and called the police.  Doc. 11, Ex. D, Bullard Dep. 62:3-63:12. Subsequently, Ty Van Nguyen and Hieu Nguyen hung a sign in front

of the Super Deli that said "Don't support the thief," which Bullard understood as a reference to her.  Doc. 11, Ex. D, Bullard Dep. 106:4-108:13.

Bullard alleges that Ty Van Nguyen and Hieu Nguyen "were acting within their authority as agents of Defendant Chevron U.S.A., Inc. d/b/a/ Texaco."  Doc. 11, Ex. B ¶ 6.[4]  Bullard testified that the Texaco sign on the Super Deli property was her only indication that Chevron is connected with that property.  Doc. 11, Ex. D, Bullard Dep. 84:17-85:1.

Chevron provided an affidavit from Ty Van Nguyen who testified that, at all relevant times, he owned and operated the Super Deli.  Doc. 11, Ex. E, Aff. Ty Van Nguyen ¶ 4.  Super Deli's employees, including Ty Van Nguyen and Hieu Nguyen, are not employed by Chevron and Chevron does not have "any involvement in the hiring, training or firing of any employees of the Super Deli."  Doc. 11, Ex. E, Aff. Ty Van Nguyen ¶¶ 5-6.  Further, Chevron does not pay Super Deli's employees.  Doc. 11, Ex. E, Aff. Ty Van Nguyen ¶ 10.  And Super Deli's employees, including the Nguyens, do not hold themselves out as representatives of Chevron.  Doc. 11, Ex. E, Aff. Ty Van Nguyen ¶ 12.

Further, Chevron (1) is not involved in the Super Deli's daily operations, (2)

---

[4]Bullard's Second Amended Complaint incorporates by reference ¶¶ 1-36 of her Amended Complaint.  Doc. 11, Ex. C ¶ 37.

does not control the Super Deli's merchandising or pricing, (3) does not receive financial or accounting records from Super Deli, and (4) does not receive operations reports from the Super Deli.  Doc. 11, Ex. E, Aff. Ty Van Nguyen ¶¶ 7-9, 11.  "The only connection that Super Deli had with Texaco and [Chevron] was related to the use of Texaco signs and selling Texaco brand gasoline."  Doc. 11, Ex. E, Aff. Ty Van Nguyen, ¶ 13.

Bullard does not dispute Chevron's statement of facts but cites to the "Texaco Branded Jobber Agreement" ("Jobber Agreement") as evidence that Chevron "retain[ed] a right of control which would substantially affect the daily operations of the Super Deli."  Doc. 12 ¶ 9.[5]  The Jobber Agreement, signed by Chevron Products Company and McCullough Snappy Service, Inc. ("McCullough")*,* permits McCullough to purchase and distribute, on a non-exclusive basis, Texaco gasoline to the Super Deli.  Doc. 14, Ex. E at 1, A-1.  Bullard claims that Chevron retains a right of control because it can terminate "the franchise relationship"[6] between the Super Deli and Chevron pursuant to section

---

[5]Bullard attached portions of the Jobber Agreement to her response.  *See* Doc. 12, Exs. A-B.  Because these portions are difficult to read and incomplete, the court cites to the full Jobber Agreement attached by the defendant.  Doc. 14, Ex. F.

[6]Chevron denies the existence of a franchise relationship between Chevron, or Texaco, and the Super Deli.  Doc. 13 ¶ 5.  Bullard, whose sole evidence of such a relationship appears to be the Jobber Agreement between McCullough and Chevron Products Company, fails to establish that a franchise agreement exists.

14 of the Jobber Agreement.  Doc. 12 ¶ 9.  The termination provisions, however, relate solely to the relationship between Chevron Products Company and McCullough – the Super Deli is simply not a party to this contract.[7]

In addition, Bullard points to an amendment to the Jobber Agreement, which provides that McCullough may authorize use of Texaco's insignia subject to certain terms and conditions, including:

> Company-approved Texaco branded retail outlets comprise a unified network with a distinctive visual identity.  By conveying a coherent and instantly recognizable image, these retail outlets boost brand recognition and increase the value of the brand for the benefit of [Chevron Products Company] and its marketers and retailers alike.  Accordingly, you shall cause the premises at all times to comply with the Company's current and future image standards for branded retail outlets, as set forth in Company's *Star 21 Guide* (published on [Chevron Products Company's] web site for its marketers and retailers) or other written communications from [Chevron Products Company]. . . .

Doc. 14, Ex. G ¶ 3.

---

[7]The court further notes that Bullard's characterization of the Jobber Agreement is either very sloppy or intentionally misleading.  By failing to attach the full Jobber Agreement (including the first page containing the names of the parties to the Agreement) and by strongly suggesting that the Super Deli is a signatory to the Jobber Agreement, (*see* doc. 12 ¶ 9), Bullard left the court with the impression that Chevron had in fact signed an agreement with Super Deli to control the relationship between the two entities.  Although this issue ultimately has no bearing on the court's decision to grant Chevron's motion, the court reminds Bullard and her counsel that this court expects the parties to carefully review submissions and that, while the court understands that counsel advocate zealously on their clients' behalf, counsel does not need to intentionally misrepresent facts to advocate effectively.  *See* Fed. R. Civ. P. 11.

### IV.  ANALYSIS

Under Alabama law, "[s]ummary judgment on the issue of agency is generally inappropriate because this issue is a question of fact to be determined by the trier of fact." *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1035 (Ala. 1986) (citing *Oliver v. Taylor*, 394 So. 2d 945 (Ala. 1981)).  However, agency may not be presumed; "the party asserting it has the burden of adducing sufficient evidence to prove its existence." *Wood*, 495 So. 2d at 1035-36.  The court considers whether the evidence presented is sufficient to establish liability under a theory of actual agency or apparent authority.  The court concludes that it does not.

*1.    Actual Agency*

With respect to actual agency, "[t]he test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance." *Id*. at 1036.

In *Wood*, Shell Oil owned a gas station that it leased to Parker Shell. *Id*. The plaintiff sought to hold Shell Oil responsible for injuries the plaintiff sustained when he slipped and fell on the premises. *Id.* at 1035.  The Supreme Court of Alabama upheld summary judgment in favor of Shell Oil, concluding that the lease and the dealer agreement between Shell Oil and Parker Shell were

insufficient to establish the existence of an agency relationship.  The agreements required, *inter alia*, that Parker Shell remain open twenty-four hours a day, perform certain maintenance tasks, and maintain a station of a design and style approved by Shell Oil.  *Id.* at 1036-37.  The agreements further provided that Shell Oil would approve all alterations on the premises.  *Id.* at 1037.  The agreements also permitted Shell Oil to inspect Parker's Shell's books and records.  *Id.* at 1037.  However, because the agreements did not "determine *how* Parker Shell is to achieve compliance with these terms," the Court determined that there was insufficient evidence of a retained right of control and that plaintiff thus failed to establish actual agency.  *Id*. (emphasis in original).  *See also Terry v. Phillips 66 Co., Inc.*, 591 So. 2d 33 (Ala. 1991) (upholding summary judgment in favor of gas station, which did not retain a right of control over lessee merely by (a) owning and maintaining gasoline tanks, (b) determining the price of gasoline, (c) receiving a commission for gasoline sales, (d) restricting gas station from selling other gasoline products, (e) and collecting money from gasoline sales each week).

   The evidence presented in this case clearly establishes that Chevron did not "reserve a right of control over the manner" of Super Deli's performance.  *Wood*, 495 So. 2d at 1036.  Bullard has produced no agreement between Super Deli and Texaco or Chevron and, to the contrary, Chevron avers that none exist.  Doc. 13 at

4. At most, McCullough, the jobber that buys Texaco gas and supplies it to the Super Deli, is tasked with ensuring that "the premises at all times [] comply with the Company's current and future image standards." Doc. 14, Ex. G ¶ 3. Notably, Bullard failed to provide the court with any evidence of what those "standards" might be or any evidence that Chevron or Texaco controls the manner of complying with such standards. Moreover, Bullard failed to rebut Chevron's evidence that neither Chevron nor Texaco (1) hires or trains the Super Deli's employees, (2) receives financial, accounting, or operating records from the Super Deli, (3) approves alterations to the Super Deli premises, (4) owns or leases the Super Deli premises, or (5) controls the daily operations of the Super Deli.

The evidence here is insufficient under *Wood* to establish an actual agency relationship between Chevron and the Super Deli.[8] In fact, there is less here to support control than in *Wood*, where the Supreme Court of Alabama found no retained right of control or agency relationship even though the lessee's agreement with Shell Oil contained numerous requirements. Here, Chevron and the Super Deli have no agreement whatsoever. Therefore, Bullard has failed to establish her

---

[8]The single case cited by Bullard does not require a different result. In *Patterson v. W. Auto Supply Co.*, the Middle District of Alabama determined that summary judgment on agency was inappropriate when Western Auto dictated the franchisee's store layout, stock plans, advertising budget, management training, bookkeeping plan, and type of insurance. 991 F. Supp. 1319, 1324-25 (M.D. Ala. 1997). Clearly, the right of control Western Auto reserved over its franchisee was far more extensive than that in *Wood* or this case.

burden of showing that an agency relationship exists. *Wood*, 495 So. 2d at 1035-36.

  2. *Apparent Authority*

With respect to apparent authority, "[w]hen one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency." *Id.* at 1038 (citations omitted). Thus, the principal must confer some appearance of authority on the alleged agent and the party alleging an agency relationship must have relied in good faith upon that appearance of authority in assuming the existence of an agency relationship.

In *Wood*, the Supreme Court of Alabama concluded that "the fact that the plaintiff testifies that the lessor oil company's distinctive logo displayed upon signs, literature, products, and employee uniforms led him or her to assume that it was operated by the oil company is not sufficient, *in itself*, to create an inference of agency, because it is common knowledge among the general public that such a logo is often displayed by independent dealers and that the only representation made by such displays is that the oil company's gasoline is sold at the service station." *Id.* at 1039 (emphasis in original).

11

Here, Bullard assumes that the Super Deli operates as Chevron's agent based solely on the Texaco sign outside the store. This is simply insufficient as a matter of law to create an inference of agency.[9] *See id*. Consequently, Bullard fails to establish that Chevron is vicariously liable based on apparent authority.[10]

---

[9] Other courts have reached the same conclusion. For example, the Florida Supreme Court determined that claims, based entirely on an agency theory, against Mobil Oil Corporation should be dismissed even though Mobil owned the property (which was leased to another), the store sold Mobil products, Mobil trademarks and logos were used through the premises of the franchise, and Mobil representatives regularly visited to provide support services. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). In rejecting the plaintiff's arguments, the court stated that "it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions." *Id.* at 120. *See also Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342 (N.D. Ga. 2005) (applying Georgia law to determine that Waffle House was not liable under a theory of agency for alleged racial discrimination at one of its franchises). *Patterson*, 991 F. Supp. at 1325 (applying Florida law to find that use of "trade dress"of a franchisor is insufficient to establish an agency relationship).

[10] Although not addressed by either party, some federal courts have applied federal common law principles of agency, rather than state common law, to analyze 42 U.S. § 2000a and 42 U.S.C. § 1981 claims. Applying such an analysis leads to the same conclusion that Chevron is not vicariously liable for the Nguyen's actions.

In *Arguello v. Conoco, Inc.*, Hispanic and African-American consumers filed an action alleging that they were subject to racial discrimination while making purchases at gas stations owned by Conoco and gas stations that were independently owned, but that sold Conoco gas and products pursuant to Petroleum Marketer Agreements ("PMAs"). 207 F.3d 803, 805 (5th Cir. 2000). The PMAs required the independently-owned gas stations to maintain their businesses in accordance with standards set by Conoco and to treat all customers fairly and courteously. *Id.* at 807. Conoco could "de-brand" any stores that failed to comply with the PMAs and Conoco conducted random, bi-annual inspections to ensure that the independent gas stations abided by the PMAs' terms. *Id*.

The Fifth Circuit held that the "plaintiff must demonstrate that there is an agency relationship between the defendant and the third party" "to impose liability on a defendant under § 1981 for the discriminatory actions of a third party." *Id.* at 807 (citing *Gen. Bldg. Contractors Assoc. v. Pa. United Eng'rs & Constructors*, 458 U.S. 375, 393 (1982)). The court concluded that the critical inquiry is whether the principal "has given consent" for the alleged agent "to act on its behalf" and whether the alleged agent is "subject to the control" of the principal. *Id*. Based on the evidence submitted, the Fifth Circuit found no agency relationship between

## IV.  CONCLUSION

For the foregoing reasons, this court determines that Chevron has met its burden of establishing that summary judgment in its favor is appropriate. Consequently, Chevron's Motion for Summary Judgment, (doc. 9), is GRANTED and all claims against Chevron are hereby DISMISSED with prejudice. Accordingly, Chevron's Motion for Hearing on Motion for Summary Judgment, (doc. 16), is MOOT.

DONE this 9th day of March, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

Conoco, Inc. and the branded stores, determining that the PMAs did "not establish that Conoco, Inc. [had] any participation in the daily operations of the branded stores [or ] participate[d] in making personnel decisions." *Id.* at 808.  *See also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285 (5th Cir. 2004) (determining that no agency relationship existed between GM and an independent business, not controlled by GM, that serviced GM's cars; holding that district court properly dismissed automobile owner's 42 U.S.C. § 1981 claim against GM, which alleged racial discrimination in refusing to service owner's car).  Under this analysis, Bullard's claims against Chevron fail also.